# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————

STATE OF CALIFORNIA; STATE OF NEVADA; COMMONWEALTH OF
MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF
CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS;
STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF
MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW
YORK; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN,

Plaintiffs-Appellees,

v.

PRESIDENT DONALD J. TRUMP, in the official capacity as President of the United States;
PAMELA BONDI, in the official capacity as Attorney General of the United States; UNITED
STATES ELECTION ASSISTANCE COMMISSION; DONALD L. PALMER, in the official
capacity as Chairman of the U.S. Election Assistance Commission; THOMAS HICKS, in the official
capacity as Vice Chair of the U.S. Election Assistance Commission; CHRISTY MCCORMICK, in
the official capacity as Commissioner of the U.S. Election Assistance Commission; BENJAMIN W.
HOVLAND, in the official capacity as Commissioner of the U.S. Election Assistance Commission;
PETE HEGSETH, in the official capacity as Secretary of Defense,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## REPLY BRIEF FOR APPELLANTS

———————————

BRETT A. SHUMATE
 *Assistant Attorney General*

LEAH B. FOLEY
 *United States Attorney*

MICHAEL S. RAAB
LAURA E. MYRON
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7228*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 514-4819*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT............................................1

ARGUMENT ...............................................................................................................3

I.    The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 2(a). ....................................................................................................4

II.   The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 3(d)............................................................................................... 10

III.  The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 7(a). .............................................................................................. 15

IV.  The Preliminary Injunction I Overbroad and Plaintiffs Cannot Show Irreparable Harm. ..................................................................................... 18

CONCLUSION ..................................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Abbott Lab'ys v. Gardner,*
387 U.S. 136 (1967) ........................................................................ 5

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013) ....................................................................... 8, 9

*Building & Constr. Trades Dep't v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) ................................................... 7, 16

*Caminetti v. United States,*
242 U.S. 470 (1917) ....................................................................... 14

*Campanale & Sons, Inc. v. Evans,*
311 F.3d 109 (1st Cir. 2002) .......................................................... 9

*Chaparro-Febus v. International Longshoremen Ass'n, Loc. 1575,*
983 F.2d 325 (1st Cir. 1992) .......................................................... 2

*Federal Trade Comm'n v. Standard Oil Co. of Cal.,*
449 U.S. 232 (1980) ....................................................................... 21

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
458 U.S. 141 (1982) ....................................................................... 18

*Harris v. University of Mass. Lowell,*
43 F.4th 187 (1st Cir. 2022) .......................................................... 2

*League of United Latin Am. Citizens v. Executive Off. of the President,*
780 F. Supp. 3d 135 (D.D.C. 2025) ......................................... 10, 16

*League of Women Voters of the U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ........................................................... 8

*Massachusetts v. U.S. Department of Health & Human Services,*
923 F.3d 209 (1st Cir. 2019) ........................................................ 12

*Minerals Separation, Ltd. v. Butte & Superior Mining Co.,*
250 U.S. 336 (1919) .................................................................. 9-10

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
    415 U.S. 1 (1974) ................................................................ 21

*Republican National Committee v. Wetzel,*
    120 F.4th 200 (5th Cir. 2024) ........................................ 3, 17

*Ridgway v. Ridgway,*
    454 U.S. 46 (1981) ............................................................ 18

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ............................................................ 8

*Ex Parte Siebold,*
    100 U.S. 371 (1879) .......................................................... 18

*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024) ............................................... 1, 3-4, 18

*Texas v. United States,*
    523 U.S. 296 (1998) ............................................................ 5

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ............................................................ 5

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ..................................................... 19, 20

*Trump v. United States,*
    603 U.S. 593 (2024) ............................................................ 8

*United States v. Alabama,*
    778 F.3d 926 (11th Cir. 2015) ......................................... 14

*United States v. Ron Pair Enters., Inc.,*
    489 U.S. 235 (1989) .......................................................... 14

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................ 1, 18

**Statutes:**

2 U.S.C. § 7 ..................................................................... 1, 15, 17

3 U.S.C. § 1 ..................................................................... 1, 15, 17

44 U.S.C. §§ 3501-3521 ............................................................ 11

52 U.S.C. § 20301 ................................................................... 10

52 U.S.C. § 20301(b)(1) ........................................................... 10

52 U.S.C. § 20302(a)(2) ............................................................ 12

52 U.S.C. § 20302(a)(8)(A) ........................................................ 14

52 U.S.C. § 20506(a) ................................................................. 1

52 U.S.C. § 20508(a)(2)) ......................................................... 6, 7

52 U.S.C. § 20508(b)(1) ....................................................... 4, 7, 11

**Regulations:**

11 C.F.R. § 9428.3 ................................................................... 19

32 C.F.R. § 233.6 .................................................................... 19

**Other:**

EAC, *Register to Vote in Your State by Using This Postcard Form and Guide*,
https://perma.cc/MN4E-EGZH ................................................19

*Proposed Collection, Comment Request (Federal Post Card Application (FPCA), Standard Form 76 (SF-76); OMB Control Number 0704-0503)*,
https://www.regulations.gov/document/DOD-2017-OS-0008-0001 ...................11

**INTRODUCTION AND SUMMARY OF ARGUMENT**

A "preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The district court erred when it concluded that plaintiffs had made the necessary showing to justify the imposition of such a remedy. As relevant here, Executive Order 14,248 (Order) (1) directs the Election Assistance Commission (EAC) to "take appropriate action" consistent with statutory requirements to add a documentary proof-of-citizenship requirement to the Federal Form, Addendum 48 (Section 2(a)), Addendum 51 (Section 11(b)); (2) directs the Secretary of Defense to update the Federal Post Card Application to include a documentary proof-of-citizenship requirement, Addendum 51 (Section 3(d)); and, (3) directs the Attorney General to "take all necessary action to enforce 2 U.S.C. [§] 7 and 3 U.S.C. [§] 1" against States with laws that allow for the counting of ballots received after Election Day in the final tabulation of votes, Addendum 53 (Section 7(a)).[1] The district court erred when

---

[1] On appeal, defendants initially challenged the district court's entry of a preliminary injunction precluding enforcement of Section 2(d) of the Order. After the opening brief was filed, however, the parties agreed that Section 2(d) of the challenged Order does not have any application to any state or local agency and defendants stipulated that no defendant would take any action pursuant to the Order to require a plaintiff State or its designated state or local voter registration agencies under 52 U.S.C. § 20506(a) to assess a person's

*Continued on next page.*

it concluded that plaintiffs were entitled to a preliminary injunction to preclude enforcement of these provisions—they are not likely to succeed on the merits of their challenges and they have not demonstrated irreparable harm.

Plaintiffs have not demonstrated that their challenges to these provisions of the Order are ripe for judicial review. All three provisions contemplate that future action is necessary. With respect to Section 2(a), the EAC must undertake a rulemaking process before the Federal Form can be finalized. At this juncture the outcome of EAC's consultation with the States, and whether the EAC will make any finding that a documentary proof-of-citizenship requirement is "necessary," are entirely speculative. Similarly, plaintiffs lack standing to bring their challenge to Section 3(d) because it imposes no recordkeeping requirements or other compliance costs on the States. And their challenge is not ripe; at this stage of the litigation, it is unclear how the Secretary will implement Section 3(d), and it is mere speculation whether he would do so in a way inconsistent with the statute. Finally, because Section 7(a)

---

citizenship prior to providing them with a federal voter registration form. *See* Dkt. 175, at 3. The district court has since dismissed the claims and the preliminary injunction precluding enforcement of those claims is thus moot. *See Harris v. University of Mass. Lowell*, 43 F.4th 187, 191 n.6 (1st Cir. 2022) ("Given the district court's final order of dismissal, the students' appeal from the preliminary injunction ruling is moot, as that order 'was merged in the final judgment dismissing the case." (quoting *Chaparro-Febus v. International Longshoremen Ass'n, Loc. 1575*, 983 F.2d 325, 331 n.5 (1st Cir. 1992)) (some quotation marks omitted)).

may be implemented in a lawful manner, there is no sound basis for enjoining the Order based on speculation that the Attorney General may nonetheless implement it in an unlawful manner.

Moreover, plaintiffs cannot show that their challenges are likely to succeed on the merits because all three provisions are consistent with their relevant statutory provisions. Section 2(a) is consistent with the National Voter Registration Act. Plaintiffs have not shown that the Secretary of Defense cannot comply with the statutory requirement that the voter registration application be in post card form when implementing Section 3(d); and Section 7(a) reflects a consistent and correct understanding of the Election Day statutes as the Fifth Circuit recognized in *Republican National Committee v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), *cert. granted sub nom.*, *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 355 (2025).

Finally, even if plaintiffs were correct on the merits, the district court's injunction should be vacated in part because it is overbroad with respect to Sections 2(a) and 3(d), and plaintiffs cannot show irreparable harm with respect to Sections 3(d) and 7(a).

## ARGUMENT

A preliminary injunction is an extraordinary remedy and one to which plaintiffs here are not entitled. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 345

(2024). For the reasons explained in the opening brief and below, plaintiffs cannot show they are likely to succeed on the merits of their claims; they lack standing; their claims are not ripe; and they fail to demonstrate irreparable harm. And even assuming plaintiffs could overcome those hurdles, the district court's injunction was overbroad. This Court should reverse the judgment below and vacate the preliminary injunction.

## I.     The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 2(a).

With respect to Section 2(a) of the Order, plaintiffs assert that the question is "whether the President may unilaterally order that documentary proof of citizenship be required . . . where the relevant statutes themselves do not require it." Br. 17 (quotation marks omitted). That assertion is misleading. The question in this case is whether the district court rightly enjoined the President from directing a federal agency to "take appropriate action" consistent with the statutory requirements. Addendum 48; *see also* Addendum 54. Contrary to plaintiffs' reading, Section 2(a) does not command the EAC to add a documentary proof-of-citizenship requirement to the Federal Form regardless of any consultation with the States and regardless of whether that consultation results in the conclusion that adding such a requirement is "necessary" within the meaning of 52 U.S.C. § 20508(b)(1). Addendum 16-18,

21. Section 2(a) simply directs the EAC to take lawful action consistent with statutory requirements.

As a result, plaintiffs' challenge to Section 2(a) is not justiciable. By its plain language, Section 2(a) contemplates that future action is necessary—the EAC must undertake a rulemaking process before any changes to the Federal Form can be finalized. Under these circumstances—where a final rule has not even been promulgated—plaintiffs cannot establish that Section 2(a) is "fit" for review because future events have not yet occurred and, indeed, they "may not occur as anticipated." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)); *see also Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967) (explaining that the basic function of ripeness jurisprudence is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). Plaintiffs' only argument to the contrary is that the dispute is ripe because "Section 2(a) leaves no uncertainty about what it requires from the EAC." Br. 28 (quotation marks omitted). Not only is this incorrect, *see infra* pp. 6-8, but it is not responsive to the government's argument on ripeness. Even assuming the EAC has a particular outcome in mind for the rulemaking process that will amend the Federal Form, since a final rule does not yet exist, plaintiffs do not yet know how they will be harmed—if at all, which is fatal to the justiciability of their claim.

5

Beyond ripeness, plaintiffs raise three arguments on appeal: that the government's reading of Section 2(a) "contravene[s] Section 2(a)'s plain text," is "inconsistent with how the EAC understood the President's directive," and "disregard[s] what defendants' own counsel told another district court." Br. 20. For the reasons outlined in the government's opening brief and before the district court, these arguments are unavailing.

1. Section 2(a) is consistent with the National Voter Registration Act. It requires the EAC to "take appropriate action" to add a documentary "proof-of-citizenship" requirement to the Federal Form. Neither the district court nor plaintiffs give meaning to the word "appropriate" in Section 2(a) or to the savings clause in Section 11(b) of the Order, which directs that it "shall be implemented consistent with applicable law." Addendum 54. Indeed, plaintiffs' brief makes this clear: they describe the order as saying "the EAC 'shall' act to 'require' documentary proof of citizenship," notably omitting the phrase "take appropriate action" from their recitation. *Compare* Br. 20 (quoting Addendum 48), *with* Addendum 48 (Section 2(a)(i)) ("[EAC] shall take appropriate action to require . . . .").

As outlined in the government's opening brief (at 18-20), there are two "appropriate actions" that the EAC is directed to take by Section 2(a): (1) to consult with the chief election officials of the States, consistent with 52 U.S.C. § 20508(a)(2), and, if, after consulting with the States, a determinations is made

that a documentary proof-of-citizenship requirement is "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," 52 U.S.C. § 20508(b)(1); then Section 2(a), (2) instructs the EAC to add that requirement to the Federal Form. Addendum 48-49. Plaintiffs argue that Section 2(a) cannot mean to direct the EAC to engage in such action because it did not cite either Section 20508(a)(2) or (b)(1). But Section 2(a) references the EAC's authority to issue the Federal Form under 52 U.S.C. § 20508, which would encompass both of these "appropriate action[s]."

Plaintiffs further misconstrue the government's reliance on the savings clause. *See* Br. 23. Defendants are not arguing that a savings clause would render an Executive Order immune from judicial review. Rather, the savings clause underscores that the directive to the EAC to "take appropriate action" directs the EAC to take only appropriate and lawful actions. Because, as explained in our opening brief (at 21), Section 2(a) may be implemented in a lawful manner consistent with relevant statutory provisions, the district court erred in enjoining the Order based on speculation that the Order might be carried out in an unlawful manner. *See Building & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (explaining that where an Executive Order "is not self[-]executing," and instructs subordinate officers to take action only to the extent permitted by law, "[t]he mere possibility that some agency might

make a legally suspect decision . . . does not justify an injunction"). To the extent the district court's conclusion suggests the President cannot direct subordinate executive officers to carry out his policies consistent with all applicable law, it should be reversed.[2]

Moreover, the statute allows the EAC to require documentary proof-of-citizenship following the consultation process if it determines it would be necessary. As the form's developer, the EAC determines what identifying information "is necessary" to assess an applicant's eligibility to vote. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 10 (D.C. Cir. 2016) ("It would be illogical for Congress to provide in section 20508(b)(1) that the consultant, rather than the developer, would determine 'necessity.'"). Contrary to plaintiffs' suggestion (Br. 27), *Inter Tribal* did resolve the question whether, if documentary proof-of-citizenship was determined to be necessary, the EAC had statutory authority to require it. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 19 (2013) ("[I]t is surely permissible if not requisite for the Government to say that necessary information which *may* be required *will* be required."). In *Inter Tribal*, the Supreme Court left open the question whether

---

[2] Plaintiffs do not contest that members of the EAC—bipartisan or otherwise—are part of the Executive Branch. The President's power to "supervise . . . those who wield executive power on his behalf" is a core constitutional authority that "follows from the text of the text of Article II." *Trump v. United States*, 603 U.S. 593 (2024) (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020)).

the EAC could decline to require information otherwise deemed "necessary," but that question is not presented by this case. *See id.* at 19.

2. Plaintiffs also incorrectly suggest that the Order must be read to elide the term "appropriate" because, in their view, the EAC—when it began the initial consultation process—impermissibly "preordain[ed] the outcome" that the President hoped to reach at the end of the process. Addendum 20. As explained in the opening brief, the National Voter Registration Act does not contain a requirement that the EAC remain open-minded about the outcome of the consultation process. And *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 117-18 (1st Cir. 2002), is not to the contrary. That case concerned whether certain letters between the parties satisfied a statutory consultation requirement or were, as a procedural matter, simply part of the public comment process. Nothing in that case speaks to whether the EAC can engage in the consultation process contemplated in Section 20508(a) with a view towards the outcome already in mind.

3. The district court (Addendum 19-20) and plaintiffs (Br. 25-26) invoke comments made by defendants' counsel at a preliminary injunction hearing in another district court case. As explained in the opening brief, the district court provided no persuasive rationale for concluding that the statements of a single government lawyer, at a hearing in a preliminary injunction posture, can forever freeze the President's understanding of his own Executive Order. *See Minerals*

*Separation, Ltd. v. Butte & Superior Mining Co.*, 250 U.S. 336, 352 (1919)

("[P]arties should not be held rigidly to statements made by their counsel in the stress of argument . . . ."). There is also no basis to suggest that this single comment in separate litigation reflects the government's position in this litigation, or even in that separate litigation. As the summary judgment briefing in the other case demonstrated, the defendants do not read Section 2(a) in the manner suggested by counsel's comment at the preliminary injunction hearing. *See* Memorandum in Support of Defendants' Cross-Motion for Partial Summary Judgment at 7, *League of United Latin Am. Citizens v. Executive Off. of the President*, No. 25-cv-0946, Dkt. No. 162-1 (2025 WL 3452170) (D.D.C. Aug. 8, 2025) ("Section 2(a) therefore simply directs the EAC to begin the process for adding a documentary-proof-of-citizenship requirement to the federal form and instructs that if it determines such a requirement is necessary, then it is statutorily required to add it to the form.").

## II.    The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 3(d).

The Uniformed Overseas Citizens Absentee Voting Act (UOCAVA) authorizes the Secretary of Defense to "prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application." 52 U.S.C. § 20301(b)(2). In doing so, the Secretary must "consult State and local election officials", *id.* § 20301(b)(1), but unlike the

changes to the Federal Form, the Secretary need not make a specific finding that a change is "necessary," before its implementation, *see id.* § 20508(b)(1). Plaintiffs and the district court err in their conclusion that the statutory requirement that the Secretary prescribe a "post card" limits his authority to require any documentary proof-of-citizenship as part of that application.

As explained in the opening brief (at 33-34), plaintiffs have not demonstrated they have standing to challenge Section 3(d) of the Order or that their challenge is ripe. The Secretary has not yet updated the Federal Post Card Application, and the Order does not establish a deadline to do so. The particulars of how or when Section 3(d) will be implemented are thus unsettled.[3] Plaintiffs argue that any documentary proof-of-citizenship requirement is contrary to the statute, but without knowing the form the documentary proof-of-citizenship requirement will take, plaintiffs and the district court must rely on pure speculation about how the requirement will be implemented and whether such a requirement could be consistent with any limitation that might be implied by the use of the term "post card" in the

---

[3] Through the Federal Voting Assistance Program, the Secretary follows the Paperwork Reduction Act's notice-and-comment rulemaking process to revise the Federal Post Card Application. *See* 44 U.S.C. §§ 3501-3521; *see also, e.g.*, *Proposed Collection, Comment Request (Federal Post Card Application (FPCA), Standard Form 76 (SF-76); OMB Control Number 0704-0503)*, https://www.regulations.gov/document/DOD-2017-OS-0008-0001 (comment period ended May 1, 2017) (example of information collection notice for FPCA revisions).

statute. In particular, the debate about whether, for example, overseas voters have passports or access to a scanner (Plaintiffs' Br. 32), highlights that much of the question before the Court remains hypothetical and thus, not ripe for review. And in the declarations on which plaintiffs rely (*see* Br. 34), the declarant repeatedly invokes phrases like "[d]epending on how the [Executive Order] is implemented," and "[i]f the [Executive Order] is implemented to allow individuals to upload an image." JA 280; *see also* JA 343 ("Under the [Executive Order], we think that election officials will have to do things differently, but we are not clear about what exactly will have to be changed."). The dispute is not ripe for judicial review.

For similar reasons, plaintiffs have not shown they have Article III standing to challenge the Order. Plaintiffs stress that they will need to "'accept,' 'process,' and . . . properly store or dispose of the submitted documentary proof," and that they might have to "field and answer questions" from voters. Br. 33-34 (quoting 52 U.S.C. § 20302(a)(2)). But they have not shown how any potential changes resulting from the Order will create additional administrative costs beyond what they already incur. Unlike in *Massachusetts v. U.S. Department of Health & Human Services*, 923 F.3d 209, 225-26 (1st Cir. 2019), plaintiffs make no effort to quantify their supposed administrative costs. They have not established that any changes to the Federal Post Card Application would invite

expenses beyond the sort of garden-variety compliance costs that States already incur when processing the voter application forms.

Moreover, as outlined in the opening brief (at 30-31), while the statutory term "post card" may place some limits on the format of the voter registration application, there is no reason to conclude that it is impossible to provide proof-of-citizenship while maintaining the post card form. Indeed, plaintiffs agree (Br. 30-31) that the current form, which is not a traditional post card, but an 8 ½ x 11 two-page document, satisfies the statutory requirement because, they say, it can be mailed without an envelope. They have not explained why it would be impossible for any documentary proof-of-citizenship requirement to also comply with that standard. And as noted in the opening brief, neither does the statutory requirement that the Secretary "prescribe a standard oath for use with any document under this chapter" affirming the veracity of the statements included under penalty of perjury limit the Secretary's authority to require documentary proof-of-citizenship. A standard oath is not a substitute for proof of eligibility.

Plaintiffs rest their argument not on the statutory text of UOCAVA but instead on the idea that the statute precludes any action by the Secretary that does not "remove procedural roadblocks" (Br. 31) (quotation marks omitted) for military and overseas voters. But this limitation is nowhere to be found in the statute, and it is contrary to the longstanding principle of statutory

interpretation that, when a question of statutory meaning arises, the inquiry begins and ends "with the language of the statute itself," because "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The statute does not prescribe limits on the size or content of the post card form nor on any required proof of eligibility.

The district court derived the "procedural roadblocks" language from an Eleventh Circuit case—*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015)—in which that court held that a State could not hold a run-off federal election 42 days after the federal primary election without running afoul of 52 U.S.C. § 20302(a)(8)(A), which requires States to transmit absentee ballots to service members who validly request them 45 days in advance of a federal election, *id.* at 929. The Eleventh Circuit based its ruling on the "plain language of the statutory provisions," but after doing so, noted that the legislative history of the statute "confirm[ed its] interpretation." *Id.* at 939. That case does not support the district court's conclusion that—notwithstanding the absence of any clear statutory limitation—Congress somehow precluded the Secretary from exercising his statutory authority to prescribe the post card form in a manner than includes documentary proof-of-citizenship because it would constitute a "procedural roadblock[]" for servicemembers to vote. Addendum

23. Indeed, as plaintiffs note (Br. 30 n.11), an earlier version of the statute, the Federal Voting Assistance Act of 1955, included "specific size and content requirements" that Congress declined to include in the current statute. This statutory context underscores that the term "post card" as used in the statute does not, as the district court held, preclude any inclusion of a documentary proof-of-citizenship requirement.

## III.   The Defendants Are Likely to Succeed on the Merits of the Challenge to Section 7(a).

Section 7(a) directs the Attorney General to "take all necessary action to enforce 2 U.S.C. [§] 7 and 3 U.S.C. [§] 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives." Addendum 53. Plaintiffs' challenge to Section 7(a) is not ripe, and the district court erred in holding that the state law provisions of the Ballot Receipt States would not be preempted by the Election Day statutes.

As explained in the opening brief, the district court erred when it concluded that plaintiffs' challenge to Section 7(a) was ripe because "the government has not indicated that the Attorney General will cabin enforcement of § 7(a) merely to sending such letters." Addendum 28. As with Section 2(a), *see supra* pp. 7-8, because the Order "is not self[-]executing" and

instructs subordinate officers to take action only to the extent permitted by law, "[t]he mere possibility that some agency might make a legally suspect decision . . . does not justify an injunction." *Allbaugh*, 295 F.3d at 33. Thus, if there are lawful ways to implement the Order, as the district court conceded there were, then there is no basis for enjoining that Order based on speculation that the government would nonetheless choose unlawful means to implement it.

Plaintiffs' argument to the contrary rests on their assertion that they "face a sufficiently credible threat of enforcement," Br. 44 (quotation marks omitted), based on the Order's language directing the Attorney General to take "all necessary action to enforce" the ballot-receipt deadline, Br. 45 (quoting Addendum 53), and a stray comment from counsel in a preliminary injunction hearing in another case. But neither the text of the Order nor a comment from counsel in another case creates a sufficient basis in *this* litigation for enjoining speculative future enforcement action before it even commences. Plaintiffs overlook that the Order's savings clause in Section 11(b) provides the assurance that the Attorney General will implement Section 7(a) "consistent with applicable law." Addendum 54. And even the district court in which the comment by counsel on which plaintiffs rely was made refused to "assume" that the Attorney General would implement Section 7(a) in a manner that would violate the law. *See League of United Latin Am. Citizens v. Executive Off. of the President*, 780 F. Supp. 3d 135, 213-14 (D.D.C. 2025). Nor does the fact that the

Department of Justice has filed wholly unrelated preemption suits against state laws that have nothing to do with ballot receipt have any bearing on whether a threat of enforcement here is speculative. If the Attorney General were to bring an enforcement action against plaintiffs pursuant to Section 7(a), or based on either 2 U.S.C. § 7 or 3 U.S.C. § 1, they could challenge her authority to do so in that enforcement action, including by contesting the government's understanding of what the Election Day statutes require.

Plaintiffs also erroneously contend that the federal election laws would not preempt state laws with respect to the receipt of ballots. As noted in the opening brief, this Court need not reach this question because the challenge to Section 7(a) is not ripe. In any event, plaintiffs' argument is incorrect. The Fifth Circuit outlined why the government is correct that the relevant state laws in the Ballot Receipt States are preempted by 2 U.S.C. § 7 and 3 U.S.C. § 1 and their establishment of "the day for the election" and "election day." *Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200, 206-09 (5th Cir. 2024), *cert. granted sub nom.*, *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 355 (2025); *see* Opening Br. 38-41.

Plaintiffs suggest (Br. 43-44) that the relevant state laws cannot be preempted because Congress did not itself expressly speak to the question whether ballots must be received by Election Day. But an express conflict between the statutory text and the relevant state law is not required. It is well established that, for example, regulations may preempt state law provided they

are not "unreasonable, unauthorized, or inconsistent with" the underlying statute. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982) (quoting *Ridgway v. Ridgway*, 454 U.S. 46, 57 (1981)). And nothing in *Ex Parte Siebold*, 100 U.S. 371 (1879), suggests that Congress must speak more clearly in this context. In *Siebold*, the Supreme Court simply reiterated the basic point that, under the Supremacy Clause, when Congress acts pursuant to the Elections Clause, "the action of Congress, so far as it extends and conflicts with the regulations of the State, necessarily supersedes [state laws]. This is implied in the power to 'make or alter.'" *Id.* at 384 (emphasis omitted). Plaintiffs may disagree with the federal government's interpretation of the Election Day statutes, and they can litigate that disagreement in a case where the dispute is ripe, but they identify no precedent suggesting that where the federal government's interpretation of an election law is consistent with the statute, the statute should not preempt contrary state laws.

## IV. The Preliminary Injunction Is Overbroad and Plaintiffs Cannot Show Irreparable Harm.

A "preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp.*, 602 U.S. at 345 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). For the reasons discussed above and in the opening brief, plaintiffs are not likely to succeed on the merits, and the preliminary injunction should be reversed for that reason alone.

However, as discussed in the opening brief, the injunction is overbroad and plaintiffs have not shown irreparable harm with respect to Sections 3(d) and 7(a).

1. Overbreadth: The district court's injunction with respect to Sections 2(a) and 3(d) applies to all 50 States. But party-specific relief is possible here. Regulations governing the Federal Form and the Federal Post Card Application expressly require them to include any state-specific instructions. *See* 11 C.F.R. § 9428.3(a)-(b); 32 C.F.R. § 233.6(b)(1)(iv)(D); *see also* EAC, *Register to Vote in Your State by Using This Postcard Form and Guide*, https://perma.cc/MN4E-EGZH (including instructions for each of the 50 States and the District of Columbia). Plaintiffs want to prohibit the EAC and Secretary from amending *any* of the 50 state-specific instructions on the Federal Form or the Federal Post Card Application to include a documentary proof-of-citizenship requirement, even though this litigation was brought by only 19 States. The injunction, which was issued before *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), was decided, is thus inconsistent with that intervening Supreme Court precedent, which affirmed the "general rule" that "an injunction [can]not bind one who was not a party to the cause" and that courts should "rebuff[] requests for relief that extend[] beyond the parties," *id.* at 842-43 (quotation marks omitted); *see id.* at 844 (noting "the party-specific principles that permeate our

understanding of equity"); *id.* at 851 ("the complete-relief principle" does not "justif[y] the award of relief to nonparties").

Notably, plaintiffs do not contest that a requirement for documentary proof-of-citizenship could be added to the state-specific instructions; rather, they instead argue that defendants have forfeited this argument by failing to specifically ask the district court for a narrower injunction. But they have identified no prejudice resulting from any forfeiture, and they have not explained why a state-specific instruction would not fully remedy their injury. There is no sound reason for this Court to ignore the Supreme Court's governing decision in *CASA* holding that "under the Judiciary Act, federal courts lack authority to issue" a universal injunction where party-specific relief can remedy the plaintiffs' asserted injury. 606 U.S. at 856. The injunction is overbroad with respect to Sections 2(a) and 3(d).

2. Irreparable Harm: As explained in our opening brief, even assuming plaintiffs were likely to succeed on the merits, the injunction should still be vacated in part because plaintiffs cannot show any irreparable harm with respect to Sections 3(d) and 7(a). As noted above, the plaintiffs suffer no harm at all with respect to Section 3(d). Unlike Section 2(a), which expressly requires the States to keep records with respect to a documentary proof-of-citizenship requirement in the Federal Form, there is no similar recordkeeping requirement in Section 3(d). Plaintiffs' only argument before this Court is that they have

demonstrated irreparable harm because they would have to spend "time, cost, and effort," Br. 35 (quotation marks omitted), if the Federal Post Card Application includes a documentary proof-of-citizenship requirement. But as noted above, they have outlined no specific administrative costs, rely on declarations that make clear that the costs are purely speculative, and have failed to explain why they would incur costs beyond what they are already expending to process Federal Post Card Applications. They have not demonstrated irreparable harm sufficient to sustain the extraordinary remedy that is a preliminary injunction.

Similarly, with respect to Section 7(a), plaintiffs' only argument (Br. 48-49) on irreparable harm is that *if* the Attorney General brought an enforcement action under the Order, they may have to allocate some resources to defend against this hypothetical suit. Not only does this argument underscore that the dispute in this case is not ripe for judicial review, it also does not establish irreparable harm, particularly if the plaintiffs are able to raise their affirmative defenses, including their arguments that the Attorney General lacks enforcement authority and that the relevant state laws are not preempted in that suit. *See Federal Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974))).

## CONCLUSION

For the foregoing reasons, the district court's preliminary injunction should be vacated and reversed.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

LEAH B. FOLEY
   *United States Attorney*

MICHAEL S. RAAB
   *s/ Laura E. Myron*
LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7228*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4819*
   *Laura.e.myron@usdoj.gov*

January 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,156 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
Laura E. Myron
Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Laura E. Myron*
Laura E. Myron